# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHAWN GEIST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-680-AMG |
| | ) |
| KILOLO KIJAKAZI, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY,[1] | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shawn Geist ("Plaintiff"), brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB"). (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR"). (Docs. 16, 20). The parties have briefed their respective positions. (Docs. 24, 28, 31).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 18, 19). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see also id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the Plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if he is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct.

---

[3] RFC is "the most [a claimant] can do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

1148, 1154 (2019) (internal quotation marks and citation omitted).  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History

Plaintiff filed an application for DIB, alleging a disability onset date of September 24, 2014.  (AR, at 175-76).  The SSA denied the application initially and on reconsideration.  (*Id.* at 94-100, 104-10).  An administrative hearing was then held on April 12, 2018.  (*Id.* at 49-78).  The Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (*Id.* at 31-45).  The Appeals Council denied Plaintiff's request for review, (*id.* at 1-6), and Plaintiff filed an appeal in federal court.  (*Id.* at 1322-25).  The court reversed the Commissioner's decision and remanded the matter because the ALJ did not properly evaluate Plaintiff's subjective symptoms.  (*Id.* at 1326-36).

A second administrative hearing was held on January 31, 2020.  (*Id.* at 1275-98).  The ALJ then issued a second decision finding Plaintiff was not disabled.  (*Id.* at 1254-69).

Plaintiff appealed the decision by filing the Complaint in this action. (Doc. 1). Because Plaintiff did not file written exceptions to the ALJ's second decision and the Appeals Council did not otherwise assume jurisdiction, it is the final decision of the Commissioner. 20 C.F.R. § 404.984(d).

## III. The Administrative Decision

At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activity between September 24, 2014, the alleged onset date, and December 31, 2015, the date last insured. (AR, at 1256). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of obesity, degenerative joint disease of the knees, fibromyalgia, back disorder, asthma, migraines, right shoulder disorder, obstructive sleep apnea, chronic maxillary sinusitis, status post left ankle fracture, major depressive disorder, and bipolar disorder.[4] (*Id.* at 1257). At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ then determined that Plaintiff had the RFC to:

> lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] could sit for about 6 hours during an eight-hour workday and could stand and walk for about 6 hours during an eight-hour workday. [Plaintiff] could occasionally climb, balance, stoop, kneel, crouch, and crawl. [Plaintiff] could occasionally reach overhead with his right upper extremity. [Plaintiff] was to avoid concentrated exposure to dusts, gases, fumes, odors, and poor ventilation. [Plaintiff] could understand, remember, and carry out simple, routine, and repetitive tasks. [Plaintiff] could relate to others on a superficial work basis. [Plaintiff] could adapt to a work setting.

---

[4] The ALJ also found Plaintiff's septal deviation, GERD, dermatitis, vision disorder, and hearing disorder were non-severe impairments. (AR, at 1257).

(*Id.* at 1260).  At Step Four, the ALJ found Plaintiff could not perform any past relevant work.  (*Id.* at 1267).  At Step Five, the ALJ relied on the testimony of a vocational expert ("VE") and found that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as office helper, collator operator, and electronics worker.  (*Id.* at 1267-68).  Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the SSA.  (*Id.* at 1269).

**IV.   Issues Presented for Judicial Review**

Plaintiff first contends that the ALJ's refusal, pursuant to 20 C.F.R. § 404.1504, to credit the determination by the Department of Veterans Affairs ("VA") that Plaintiff was disabled, was error because the SSA's regulation is contrary to statute and not entitled to deference.  (Doc. 24, at 4-6).  Next, Plaintiff asserts the ALJ did not follow the court's remand order because he failed to properly consider the effect of Plaintiff's "bad days" when analyzing Plaintiff's subjective symptoms.  (*Id.* at 6-9).

**V.    Analysis**

    **A.   The ALJ Properly Considered the VA's Disability Determination Under Current SSA Regulations, Which Are Entitled To Deference.**

Plaintiff's record contains a letter from the VA indicating Plaintiff has one or more service-connected disabilities causing him to be "totally and permanently disabled" and "unemployable."  (AR, at 171).  The ALJ considered the VA's prior determination as follows:

> [T]he [VA] service-connected ratings were reviewed; however, because this type of evidence is inherently neither valuable nor persuasive, no analysis will be provided about how it was considered.  Nevertheless, the undersigned notes that the disability determination processes utilized by the VA and the

> [SSA] are fundamentally different. The VA does not make a function-by-function assessment of an individual's capabilities or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy. Further, the rating by the VA is not a medical opinion, but rather an administrative finding dispositive of a case and such issues are reserved to the Commissioner. While the supporting medical evidence contained with the VA's records and presumably that used for such rating was reviewed and considered by the undersigned, the VA finding of any service-connected disability rating, per the Regulations is inherently neither valuable nor persuasive in deciding whether or not the claimant is disabled (20 C.F.R. 404.1504 and 404.1520b(c)(1)).

(*Id.* at 1266-67).

The ALJ's analysis is consistent with applicable SSA regulations for claims filed on or after March 27, 2017, such as Plaintiff's.[5] 20 C.F.R. § 404.1504 provides that:

> [o]ther governmental agencies and nongovernmental entities — such as the Department of Veterans Affairs . . . — make disability. . . and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled . . . . However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

The SSA has deemed decisions by other governmental agencies and nongovernmental agencies "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." *Id.* § 404.1520b(c)(1). Thus, the ALJ properly considered the VA's determination under the SSA's regulations.

---

[5] Plaintiff filed his claim for DIB on May 19, 2017. (AR, at 175).

Regulations are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to statute." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). Plaintiff asserts that the SSA's regulation, 20 C.F.R. § 404.1504, is contrary to the enabling statute, 42 U.S.C. § 405(b)(1), and thus is not entitled to deference and should not have been applied by the ALJ in this case. (Doc. 24, at 4-6). Plaintiff argues that the ALJ should have instead analyzed the VA disability rating under Tenth Circuit case law predating the enactment of § 404.1504. (*Id.*) The Court disagrees.

This Court "must give effect to the unambiguously expressed intent of Congress" in a statute when "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842-43. If Congress has not directly addressed the issue, the Court must determine whether the related regulation in question "is based on a permissible construction of the statute." *Id.* at 843.

42 U.S.C. § 405(b)(1) provides that decisions unfavorable to a claimant "shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." The Court finds that this statute does not speak to the precise question at issue in 20 C.F.R. § 404.1504 – the amount of weight or analysis given to disability determinations issued by other governmental agencies.

Plaintiff further asserts "20 C.F.R. § 404.1504 is not a permissible construction of the statute, because it is directly contrary [to] the plain language of 42 U.S.C. § 405(b)(1), i.e., that decisions should 'set forth a discussion of the evidence.'" (Doc. 24, at 5). Plaintiff argues that Congress, through 42 U.S.C. § 405(b), intended for the SSA "to issue

8

regulations enumerating what evidence was *required* to establish disability, not what evidence could be *ignored*." (Doc. 31, at 2). He posits that "the Commissioner is not allowed to issue a regulation absolving himself of his duty to issue a decision setting forth a discussion of the evidence as required by the statute, especially when that evidence is a determination by a co-equal agency of the Executive Branch based on a 'markedly similar' standard of disability." (*Id.* at 4).

The Court does not find merit in Plaintiff's argument. 42 U.S.C. § 405 requires the Commissioner to issue a decision which includes a discussion of the evidence and a statement of the reasons upon which the decision was based. *Id.* at 405(b)(1). The statute grants the Commissioner "full power and authority" to "adopt reasonable and proper rules and regulations to regulate and provide for the **nature and extent of the proofs and evidence** and the method of taking and furnishing the same in order to establish the right to benefits." *Id.* § 405(a) (emphasis added). The SSA utilized this authority to enact 20 C.F.R. § 404.1504 and § 404.1520b(c)(1), which together establish the nature of another government agency's decision that a claimant is not disabled – that nature is not valuable or persuasive. Section 404.1504 does not allow the ALJ to "ignore" the decision as Plaintiff suggests. Indeed, the ALJ addressed the VA's finding in the decision. (AR, at 1266-67). Nor does the regulation absolve an ALJ from the statutory requirement to discuss the evidence in the case or provide the reasons for his or her decision. The ALJ discussed the value and persuasiveness of the evidence of the VA rating. (*Id.*) And although 20 C.F.R. § 404.1504 does not require explicit analysis of a governmental agency decision that a claimant was disabled, it still requires the ALJ to consider the underlying

medical evidence. Thus, the Court finds the regulation is not manifestly contrary to statute nor based on an impermissible construction of statute.

Plaintiff does not argue that 20 C.F.R. § 404.1504 is arbitrary or capricious. Nor does the Court believe any such arguments to be meritorious. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."). Thus, the Court gives the regulations deference and finds they were properly applied by the ALJ.[6] *Cf. Novak v. Saul*, 2021 WL 1646639, at *3 (W.D. Okla. Apr. 27, 2021) (finding "the post March 27, 2017 regulations" related to medical source opinions "are a reasonable result of the Commissioner's rule-making authority"). Plaintiff's argument that the Court should apply Tenth Circuit authority issued prior to March 27, 2017, the effective date of 20 C.F.R. § 404.1504, fails. (Doc. 24, at 4-6). *Gonzales v. Saul*, 2020 WL 364843, at *5 (D.N.M. Jan. 22, 2020) ("Because [Plaintiff] filed his application for benefits after March 27, 2017, the ALJ was required to apply the

---

[6] Plaintiff also contends the regulation is "not entitled to . . . *Auer* deference." (Doc. 24, at 6). But *Auer* deference applies to a federal agency's interpretation of its own regulations, while *Chevron* deference applies to a federal agency's interpretation of statutes. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 397 (2008); *see also Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 617 (2013) ("In practice, *Auer* deference is *Chevron* deference applied to regulations rather than statutes.") (Scalia, J., concurring). Here, Plaintiff challenges the agency's interpretation of a statute, so only *Chevron* deference at issue.

new versions of these regulations when he adjudicated [Plaintiff's] claim."). *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) ("New regulations at variance with prior judicial precedents are upheld unless they exceeded the Secretary's authority [or] are arbitrary and capricious.") (internal quotation marks omitted).

### B. The ALJ Followed the Directive of the Remand Order and Appropriately Considered Plaintiff's Symptoms.

Plaintiff contends the ALJ did not follow the court's Memorandum Opinion and Order reversing the Commissioner's decision and remanding the case. (Doc. 24, at 6-9). The Court found "the ALJ's evaluation of Plaintiff's subjective allegations was not supported by substantial evidence because the ALJ failed to discuss the impact of Plaintiff's 'bad days' which were caused by pain." (AR, at 1334). Specifically, the Court noted that the ALJ should have "discuss[ed] the fact that Plaintiff suffered flare-ups of pain 3-4 times per week that had caused him to miss work." (*Id.* at 1335). The Court found the "omission of such evidence rendered the ALJ's decision lacking in substantial evidence" and that "remand [was] appropriate for proper evaluation of Plaintiff's pain." (*Id.* at 1335-36).

On remand the ALJ noted that:

> [Plaintiff] indicated that he had "good" days and "bad days" due to pain and that a bad" day would be one when he could "hardly get out of bed" (Hearing testimony). He estimated that he had "bad" days 3-4 times per week at the time he was fired from his job.

(*Id.* at 1261). When formulating the RFC, the ALJ stated he specifically considered Plaintiff's "report of pain on 'bad' days and how his 'bad' days resulted in the termination of work, as instructed by the District Court." (*Id.* at 1265). By specifically including

11

Plaintiff's report and description of his "bad days" and considering the evidence when assessing Plaintiff's subjective symptoms, the Court finds the ALJ complied with the remand order.

Plaintiff concedes that the ALJ did not omit discussion regarding his testimony that he had "bad days," but he asserts the ALJ did not go far enough in his analysis. (Doc. 24, at 8). Specifically, Plaintiff asserts the ALJ's analysis "is simply boilerplate language, if anything, masquerading as an actual analysis." (*Id.*) The Court disagrees and finds the ALJ appropriately considered Plaintiff's symptoms.

When considering a claimant's subjective symptoms, the ALJ must determine whether the claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *See* Social Security Ruling ("SSR") 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *7 (S.S.A. Oct. 25, 2017).[7] If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id*. Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such

---

[7] "This evaluation, previously termed the 'credibility' analysis, is now termed the 'consistency' analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a 'consistency' and 'credibility' analysis. *See Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority." *Tina G.B., v. Kijakazi*, 2021 WL 3617449, at *3, n.2 (N.D. Okla. Aug. 16, 2021). *See also Olson v. Comm'r, SSA*, 843 F. App'x 93, 97 n.3 (10th Cir. 2021) ("The Commissioner no longer uses the term 'credibility' in evaluating a claimant's statements. The analysis, however, remains substantially the same.") (internal citation omitted).

12

determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008). Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation marks omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*. Furthermore, the ALJ is entitled to resolve evidentiary conflicts. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

Here, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR, at 1262). As support, the ALJ appropriately considered medical evidence, Plaintiff's testimony, and Plaintiff's ability to perform daily activities. (*Id.* at 1262-65). The ALJ accurately summarized Plaintiff's testimony about his "bad days" and explicitly considered it when undertaking the symptom analysis. (*Id.* at 1261, 1265). Although Plaintiff contends the ALJ should have further explained how Plaintiff's "bad days" impacted the analysis, he was not required to do so. *See Spears v. Saul*, 2020 WL 9421160, at *6 (W.D. Okla. May 7, 2020) (finding the ALJ's symptom analysis was not boilerplate where the ALJ cited evidence from the record), *adopted*, 2021 WL 1700360 (W.D. Okla. Apr. 29, 2021); *Ashcraft v. Berryhill*, 2018 WL 4855215, at *8 (W.D. Okla. Oct. 5, 2018) ("While the ALJ's initial paragraph discussing Plaintiff's symptoms contained boilerplate language, she continued her discussion to address the factors contained in the regulations and cited

evidence to support her findings. Thus, the ALJ's findings were not impermissibly vague.") (internal citation omitted).

Because the ALJ considered the effect of Plaintiff's "bad days" when analyzing Plaintiff's symptoms and formulating the RFC, the Court will not disturb his findings. To do so would be to impermissibly reweigh the evidence.

## VI. Conclusion

For the reasons discussed above, the Court **AFFIRMS** the decision of the Commissioner.

ENTERED this 2nd day of March, 2022.

*Amanda Maxfield Green*
AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE